**24SO-CV01553**

Electronically Filed - SCOTT - September 09, 2024 - 08:34 AM

## IN THE CIRCUIT COURT OF SCOTT COUNTY, MISSOURI
### THIRTY-THIRD JUDICIAL CIRCUIT

| | |
|---|---|
| HANOR & BIXLER FARMS, LLC,<br>TETLEY COMPANY, LLC,<br>PRESTON DALE ARNOLD,<br>BRANDON SUTTON, and<br>EMILY SUTTON,<br><br>Plaintiffs, individually and on behalf of<br>similarly situated individuals<br><br>    v.<br><br>TYSON FOODS, INC.<br>TYSON CHICKEN, INC.<br>TYSON SALES AND DISTRIBUTION,<br>INC.<br>**Serve Registered Agent:**<br>United Agent Group Inc.<br>12747 Olive Blvd., Suite 300<br>St. Louis, MO 63141<br><br>MARK AVERY<br>**Serve at:**<br>9144 Co. Rd. 659<br>Dexter, MO 63841<br><br>CAL-MAINE FOODS, INC.<br>**Serve Registered Agent:**<br>CSC-Lawyers Incorporating Service<br>Company<br>221 Bolivar Street<br>Jefferson City, MO 65101<br>Defendants. | **JURY TRIAL DEMAND**<br><br>Case No. |

## PETITION – BROILER FARMERS CLASS ACTION

1

Plaintiffs Hanor & Bixler Farms, LLC, Tetley Company, LLC, Preston Dale Arnold, Brandon Sutton, Emily Sutton, individually and on behalf of all similarly situated persons and entities (as defined by the Class Definition and limited to no more than the 45 class members described herein) submit this Petition – Broiler Farmers Class Action against Defendants Tyson Foods, Inc., Tyson Chicken, Inc., Tyson Sales & Distribution, Inc. ( "**Tyson**" or the "**Tyson Companies**"), Mark Avery ("**Avery**"), and Cal-Maine Foods, Inc. ("**Cal-Maine**") (Tyson, Avery, and Cal-Maine are "**Defendants**"), and allege the following upon knowledge and belief, and investigation of counsel:

## BACKGROUND

1.      This lawsuit is about Defendants' anticompetitive and fraudulent scheme to eliminate competition for the processing of poultry, reduce the supply of broiler chickens, and achieve artificially high profits. Defendants' scheme devastated the community of Dexter, Missouri and the 45 Class Members in that area.

2.      For decades, Tyson operated a vertically integrated chicken production system based in Dexter, Missouri (the "**Dexter Complex**").

3.      Plaintiffs and the putative class members constructed broiler chicken houses on their farms and financed the construction through "poultry banks."

4.      The chicken houses could be used for one thing and one thing only: raising chickens for slaughter at the chicken processing plant in Dexter.

5.      Each named Plaintiff and all putative class members own broiler chicken barns built exclusively to raise broiler chickens for slaughter.

2

6. On August 7, 2023, Tyson announced that all operations at the Dexter Plant would stop in October 2023.

7. Tyson's closure announcement shocked and devastated the Dexter community, though Cal-Maine knew it was coming before the public, because upper-level management officials from Cal-Maine were present at Tyson's Dexter Complex on August 7, 2023.

8. On ███Redacted███—the very next day after Tyson announced the closure—Tyson and Cal-Maine secretly ████████ ███Redacted███ ████████

9. Tyson's announcement that it was closing the Dexter Plant was met with immediate scrutiny from Missouri's elected officials, including United States Senator Josh Hawley and Missouri Attorney General Andrew Bailey. These men raised serious concerns that Tyson's closing of the Dexter Plant would destroy the local economy, eliminate hundreds of jobs, and wipe out families who had built chicken farms with borrowed money to meet Tyson's specifications.

10. Senator Hawley and AG Bailey warned Tyson not to take any steps to prevent a competitor from acquiring the Dexter Plant. They made clear that any attempt by Tyson to prevent a chicken processor from acquiring the Dexter Plant would violate Missouri law.

11. Senator Hawley obtained specific commitments from Tyson's CEO, Donnie King, that Tyson would not prevent a competitor (another chicken processor) from acquiring the Dexter Plant. Senator Hawley reported his conversation in a September 15, 2023, social media post:

**Josh Hawley** ✓
@HawleyMO

I spoke with the CEO of Tyson Food today, Donnie King. He told me, first, Tyson is willing to sell its facilities in Dexter and Noel, Missouri to any interested party – including a competitor. I was glad to hear it, because anything less would violate antitrust laws. I hope Tyson is actively pursuing a sale that will save these jobs in Missouri. Second, he told me Tyson would help any farmer who wanted to keep raising chickens to do so, including helping them get new contracts with Tyson or other companies. We will hold him to these commitments

3:15 PM · Sep 15, 2023 · **245K** Views

12.   AG Bailey echoed Senator Hawley in an October 3, 2023, letter to Tyson's CEO, stating that it is "paramount that you do everything in your power to either keep the facilities open or sell to any interested party, including a competitor."  The letter went on to explain that a refusal to sell the Dexter Plant to a competitor would violate Missouri law.

13.   Tyson broke its word to Senator Hawley and AG Bailey.

14.   At the same time Tyson was making commitments to Missouri public officials, Tyson's internal documents prove that it ████████ Redacted ████████ ████████ Redacted ████████ In an internal document, Tyson expressly stated its plan was to ████████ Redacted ████████ ████ Redacted ████ (Emphasis added.)[1]

---

[1] Defendants have marked almost all documents as "confidential" under the Protective Order entered in a separate case.  The documents are not "confidential," but they are damning evidence, which is why Tyson wants to shield this information from the public. Until Defendants lift Tyson's "confidential" stamp, Plaintiffs must redact the purportedly "confidential" information from pleadings..

4

Electronically Filed - SCOTT - September 09, 2024 - 08:34 AM

15.    Donnie King, Tyson's Chief Executive Officer, has stated that it is Tyson's policy not to sell facilities to competitors.

16.    Tyson ▮▮▮▮▮Redacted▮▮▮▮▮ and sold the Dexter Plant to Cal-Maine Foods, Inc., but ▮▮▮▮▮Redacted▮▮▮▮▮ ▮▮▮▮▮Redacted▮▮▮▮▮ and, instead, would only process table (not fertile) eggs.

17.    Selling to Cal-Maine—a processor of table eggs (not fertile eggs) ▮Redacted▮ ▮▮Redacted▮▮—decimated all broiler chicken farmers in the Dexter area, like Plaintiffs, whose farms were financed and built exclusively for the chicken slaughter system. Plaintiffs' farms were not built to grow table eggs, which is an entirely different grow process.

18.    Tyson gutted the plant of the equipment necessary to process chickens, and Cal-Maine extensively retrofitted and modified so that chickens could not be processed. The modifications are to such an extent that the Dexter plant will never again be used as a broiler chicken processing plant.

19.    Due to the nature of the broiler chicken farming and processing businesses, broiler houses must be located within 50 miles of a processing plant to supply broiler chickens to the plant. After Tyson's sale of the Dexter Complex to Cal-Maine and Defendants' modifications converting the plant to process table eggs, Plaintiffs and all putative Class Members are geographically isolated from any broiler processing plant because no Plaintiff or putative Class Members have broiler chicken barns within 50 miles of a plant.

20.    It is cost prohibitive for any company to build a new broiler chicken processing plant and enter the Dexter geographic market to process broiler chickens.

21.    Because of Defendants' ▓▓▓Redacted▓▓▓ ▓▓▓Redacted▓▓▓, Plaintiffs and the putative Class Members will not just be precluded from growing broiler chickens in their barns for the near future. Rather, ▓▓▓Redacted▓▓▓ ▓▓▓Redacted▓▓▓

22.    Defendants' anticompetitive agreement and intent to restrain trade in broiler chicken production in the Dexter geographic market was memorialized in writing.

23.    In the contract between Tyson and Cal-Maine, the parties stipulated to ▓▓▓ ▓▓▓Redacted▓▓▓    The Property Use Agreement between Tyson and Cal-Maine is referenced in a document titled "Memorandum of Understanding" filed publicly with the Stoddard County Recorder of Deeds at Book 2024, page 774. Tyson did *not*, however, file the Property Use Agreement with the Stoddard County Recorder of Deeds.

24.    In fact, the Property Use Agreement expressly states: ▓▓▓Redacted▓▓▓ ▓▓▓Redacted▓▓▓ (Underline in original). This is because Tyson and Cal-Maine do not want the public, including Missouri's elected officials and broiler chicken growers, to know the anticompetitive terms of the Property Use Agreement.

25.    There is a simple reason for that:  The Property Use Agreement ▓Redacted▓ ▓▓▓Redacted▓▓▓

Electronically Filed · SCOTT · September 09, 2024 · 08:34 AM



The Property Use Agreement <span>Redacted</span>

26.    The publicly filed Memorandum of Understanding does not reveal the terms of the Property Use Agreement, but it does reflect that the "Property Use Agreement shall remain in force and effect . . . [until] the **twenty-fifth (25th) anniversary**" of Defendants' execution of the Memorandum of Understanding.

27.    For more than a generation, the Property Use Agreement [Redacted]

28.    Notably, after Tyson was served with a separate lawsuit alleging that the Property Use Agreement was an illegal restraint of trade, Tyson and Cal-Maine "rescinded" the Property Use Agreement.

29.    This "rescission" is an admission that the Property Use Agreement is an illegal contract for the restraint of trade.

30.    The fact that Tyson and Cal-Maine have purportedly rescinded the Property Use Agreement changes nothing. The anticompetitive injury has already been done to the Class Members. Tyson already gutted the plant of all equipment needed to process

---

[2] The Property Use Agreement provides that it [Redacted] Under Missouri law, "meat" means "any edible portion of livestock, poultry, or captive cervid carcass or part thereof," § 265.300(7), and "meat product" means "anything containing meat intended for or capable of use for human consumption, which is derived, in whole or in part, from livestock, poultry, or captive cervids," *id.* at (8).

Electronically Filed - SCOTT - September 09, 2024 - 08:34 AM

chickens, and Cal-Maine completely retrofitted the Dexter processing plant so that it can only used to process table eggs.

31.     Defendants have already achieved the purpose of the Property Use Agreement—whether it has been "rescinded" or not—[Redacted]

[Redacted]

32.     Defendants' scheme [Redacted]

[Redacted] Tyson admitted as much in a court filing:

> 63.     The significant investments made by Cal-Maine to repurpose and improve the Dexter Complex and hire the farmers serving that facility has assuaged Tyson's concern about the potential for arbitrage with the Dexter Complex, and eliminated the need for a deed restriction that reduces the risk that Cal-Maine could profitably engage in arbitrage.
>
> 64.     Comfortable that Cal-Maine was not trying to flip the Dexter Complex and the Property Use Agreement was no longer necessary to protect Tyson's interests, Tyson entered a Termination Agreement with Cal-Maine that eliminated the Property Use Agreement on July 25, 2024. A Release of Memorandum of Understanding memorializing this Agreement was publicly recorded with the Recorder of Deeds in Stoddard County, Missouri on July 29, 2024, in Book 2024, Page 2309.

33.     This restraint of trade engaged in by Tyson, Cal-Maine and Avery renders Plaintiffs' broiler chicken farms—built to only grow broiler chickens with money borrowed from "poultry banks"—worthless.

34.    As stated in the 2018 Report of the SBA's Office of Inspector General, "'without an integrator contract, the [chicken] houses themselves are worthless.'" OIG Report at 8 (quoting a poultry lender).

35.    Defendants' restraint of trade has eliminated any competition in the Dexter market for the services of broiler chicken growers like Plaintiffs and the Class Members, causing them substantial harm.

## PARTIES

36.    Plaintiff Hanor & Bixler Farms, LLC is a Limited Liability Company organized under the laws of the State of Missouri, with its principal place of business being 95 Co Hwy 854, Matthews, MO 63867.  Hanor & Bixler Farms, LLC owns in fee simple real property with improvements thereon, specifically 10 broiler chicken barns located in Stoddard County, Missouri. Hereinafter, Plaintiff Hanor & Bixler Farms, LLC is referred to as "**Bixler**."

37.    Plaintiff Tetley Company, LLC is a Limited Liability Company organized under the laws of the State of Missouri, with its principal place of business being 323 C. H. 213, Chaffee, MO 63740.  Plaintiff Tetley Company, LLC owns in fee simple real property with improvements thereon, specifically 6 broiler chicken barns located in Scott County, Missouri.  Hereinafter, Plaintiff Tetley Company, LLC is referred to as "**Tetley**."

38.    Plaintiff Preston Dale Arnold is an individual who at all times relevant herein resided in Scott County, Missouri.  Plaintiff Preston Dale Arnold is the fee simple owner of real property which has improvements constructed thereon, specifically 8 broiler

chicken barns, situated in Scott County, Missouri. Hereinafter, Plaintiff Preston Dale Arnold is referred to as "**Arnold**."

39.   Plaintiffs Emily Sutton and Brandon Sutton are individuals who at all relevant times resided in Scott County, Missouri and owned in fee simple real property with improvements thereon, specifically 8 broiler chicken barns.  Hereinafter, Plaintiffs Emily Sutton and Brandon Sutton are collectively referred to as "**Sutton**."

40.   Defendant Tyson Foods, Inc is a corporation formed under the laws of the State of Delaware having its principal place of business at 2200 W Don Tyson Pkwy # CP131, Springdale, Arkansas.

41.   At 1001 East Stoddard Street, Dexter, Missouri, there is a large broiler chicken processing plant ("**Dexter plant**") that for years had slaughtered and processed live chickens for human consumption operating under USDA Grant of Inspection # M7089+P7089 registered in the name of Tyson Foods, Inc.

42.   The USDA Grant of Inspection # M7089+P7089 was held under the name of Tyson Foods, Inc. and is registered as doing business as Tyson Chicken, Inc and/or Tyson Sales and Distribution, Inc.

43.   Defendant Tyson Chicken, Inc is a corporation formed under the laws of the State of Delaware having its principal place of business at 2200 W Don Tyson Pkwy # CP131, Springdale, Arkansas.

44.   Defendant Tyson Sales & Distribution, Inc is a corporation formed under the laws of the State of Delaware having its principal place of business at 2200 W Don Tyson

Pkwy # CP131, Springdale, Arkansas. It is a wholly owned subsidiary of Tyson Foods, Inc.

45.     Defendant Mark Avery is an individual residing in Stoddard County, Missouri. Avery served in a supervisory and/or management role at Tyson, including but not limited to the position of Complex Manager of the Dexter Complex and Vice President.

46.     Defendant Cal-Maine Foods, Inc. is a corporation formed under the laws of the State of Delaware with its principal place of business in Ridgeland, Mississippi.

## JURISDICTION AND VENUE

47.     Jurisdiction is proper in this Court because Defendant Avery resides in and is a citizen of Missouri. The Tyson Companies and Cal-Maine each did and do substantial business in Missouri, and they own and manage property in Stoddard County, Missouri, and jurisdiction is also plainly proper as to them.

48.     Plaintiffs and the Class Members make no claim under federal law.

49.     Venue is proper in this Court because Plaintiffs Tetley, Arnold, and Sutton were injured in Scott County where their broiler chicken barns are situated.

50.     Plaintiffs and all putative Class Members released the Tyson Companies of all liability in connection with their now-terminated contracts with Tyson.  Plaintiffs and the remaining Class Members make no claim arising out of their previous arrangements or contracts with any Tyson Company.  To the contrary, the Class Members' claims arise solely out of Tyson's conduct *post-dating* the releases.

51.     As noted in Exhibit A, which identifies the putative Class Members, to the extent any putative Class Member did not sign a release, that individual or entity is not a

Class Member. Accordingly, the venue provisions of 7 U.S.C 197b do not apply to this lawsuit, and venue is proper in this Court.

52. Because the putative Class is limited to no more than 45 members, and because there is a lack of diversity among parties, and because Plaintiffs and the Class make no claim under federal law, this case can only be adjudicated in Missouri state court. No federal court has or could have jurisdiction. There is no non-frivolous basis for removal. Any attempt to remove this case to federal court would be an improper attempt to, among other things, unnecessarily delay the proceedings and needlessly increase the cost of litigation, and would be subject to the most serious sanctions available under Federal Rule of Civil Procedure 11 and Missouri's Rules of Professional Conduct.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

53. The Tyson Companies operated the Dexter Complex in Stoddard County, Missouri for over twenty years. And before that, the Dexter Complex had operated as a slaughterhouse for broiler chickens since 1893.

54. Broiler chickens account for nearly all domestic chicken consumption.

55. The Tyson Companies and their competitors have transformed the chicken processing industry by concentrating the market such that a small number of integrators, who own the eggs, birds, processing plants and contracts for sale, control more than ninety percent (90%) of the market.

56. Today, broiler production is concentrated into localized networks of production dominated by vertically integrated poultry companies.

57.     Broiler chicken barns must be situated within 50 miles of the processing plant.

58.     There is no other chicken processing plant within 50 miles of Dexter, Missouri.

59.     As a result, all broiler farmers within 50 miles of the Dexter Complex (i.e., the Class Members) had only one option for where to grow and sell chickens: the Dexter Plant.

60.     After announcing the planned closure of the Dexter Complex on August 7, 2023, Tyson made public promises that it would do its best to sell the Dexter Complex to another meat-processing company (i.e., a competitor).

61.     Tyson broke its promises.

62.     Internal Tyson documents ⬛⬛⬛ Redacted ⬛⬛⬛ ⬛⬛⬛ Redacted ⬛⬛⬛ In fact, in an internal memo Tyson expressly stated its plan was to "⬛⬛⬛ Redacted ⬛⬛⬛ ⬛⬛⬛"

63.     Instead, Tyson negotiated a deal to sell the Dexter Complex to Cal-Maine for roughly ⬛ Redacted ⬛, according to the Purchase and Sale Agreement dated December 29, 2023 between Tyson and Cal-Maine ("**Dexter Sale Agreement**").

64.     This sale price was significantly ⬛⬛⬛ Redacted ⬛⬛⬛
⬛⬛⬛ Redacted ⬛⬛⬛
⬛⬛⬛ Redacted ⬛⬛⬛

65.   [Redacted]

[Redacted] is evidence that the transaction was not a product of fair market negotiation, but rather collusion between Tyson and Cal-Maine for the purpose to restrain trade and suppress the market supply of chicken meat.  It was a sham sale.

66.   The Dexter Sale Agreement refers to a secret [Redacted] [Redacted] between Tyson and Cal-Maine. This [Redacted] was [Redacted] [Redacted] after Tyson announced it was closing the Dexter Complex.

67.   The Dexter Sale Agreement between Tyson and Cal-Maine [Redacted] [Redacted]

68.   The Dexter Sale Agreement between Tyson and Cal-Maine states [Redacted] [Redacted] [Redacted]

69.   The Dexter Sale Agreement goes on to state that [Redacted] [Redacted] [Redacted] other than Mark Avery.

70.   This means, according to Tyson, that Mark Avery—and only Mark Avery— has knowledge about all [Redacted] referenced in the Dexter Sale Agreement. Dexter Sale Ag. at ¶4. This massive volume of [Redacted] includes, but is not limited to, those listed in [Redacted] of the Dexter Sale Agreement. *Id.* at Exh. B [Redacted] [Redacted]

71.    Avery has all company knowledge, according to Tyson, about whether or not ████████████ ████████ *Id.* at ¶7.1.5.

72.    And it is Avery—and according to Tyson, only Avery—who has knowledge about the ████████████████ ████████ *Id.*

73.    Only Avery, according to Tyson, knows whether Tyson's ████████ ████████ or violated Missouri law as Plaintiffs contend. *Id.*

74.    Only Avery has knowledge about the ████████ ████████ Tyson announced the closure of the Dexter Complex. *Id.* at ¶5.4.

75.    It is Avery's job—and, according to Tyson, only Avery's job—to determine whether Cal-Maine ████████ described in the following paragraphs. *Id.* at Exh. G-1.

76.    This made Avery the enforcer of the anticompetitive scheme.

77.    The Dexter Sale Agreement between Tyson and Cal-Maine ████████ ████████

78.    Two ████████ the Dexter Sale Agreement between Tyson and Cal-Maine are ████████ titled "Memorandum of Understanding." The latter was filed publicly with the Stoddard County Recorder of Deeds at Book 2024 Page 774.

79.     The Memorandum of Understanding refers in vague terms to a "Property Use Agreement" between Tyson and Cal-Maine, including the facts the "Property Use Agreement" "shall remain in force and effect" for 25 years and that it "shall bind Cal-Maine, any successor grantee, transferee, assignee, owner, tenant or any other party in possession" of the property on which the Dexter Complex was located.

80.     But the publicly filed document does not detail or describe the terms and conditions imposed by Tyson in the "Property Use Agreement."

81.     That is because the terms of the Property Use Agreement are illegal and violate Missouri law.

82.     For 25 years, the Property Use Agreement ███████ Redacted ████████ ████████████████ Redacted ████████████████ ████████ Redacted ████████

83.     It was Avery's job, according to Tyson, to ██████ Redacted ██████ ████ Redacted ████ Dexter Sale Ag. at Exh. G-1.

84.     It was Avery's job, according to Tyson, ██████ Redacted ███████ ████████ Redacted ████████ *Id.*

85.     The 25-year restriction ██████ Redacted ██████ because Defendants gutted the Dexter Complex, ██████ Redacted ██████ so that it can never again be used to process chickens.

86.     Just like Tyson, Cal-Maine contracts with chicken growers to raise chickens across the country.  Cal-Maine is, therefore, a competitor of Tyson.  As Tyson has reported in SEC filings, "[c]ertain of our competitors may also negotiate more favorable contract

Electronically Filed - SCOTT - September 09, 2024 - 08:34 AM

terms that could provide them [chicken growers] with competitive advantages and affect our supply."

87.   As admitted by Tyson, if Cal-Maine paid growers more than Tyson, such competition would harm Tyson.  The Tyson Companies of today will not tolerate that kind of free market competition.

88.   The Property Use Agreement between Tyson and Cal-Maine—and Defendants' gutting of the Dexter plant [Redacted] [Redacted]—is *per se* illegal under Missouri law.  Alternatively, Defendants' actions violate the rule of reason in that they unreasonably restrain trade in the market for broiler chicken farmer services in the Dexter, Missouri relevant market area.

89.   Avery actively participated in, authorized, directed and/or knowingly approved or ratified this anticompetitive scheme.

90.   There is a relevant product or service market for broiler chicken farmer services that consists of chicken farmers who offer their services to meat-processing companies.

91.   There is a relevant geographic market for broiler chicken farmer services that consists of the 50 miles surrounding the Dexter Complex.

92.   There are no conceivable pro-competitive benefits for Defendants' restraint of trade.

93.   Even if any alleged pro-competitive benefits exist, they are substantially outweighed by the anticompetitive effects of Defendants' contract, combination or conspiracy in restraint of trade.

Electronically Filed - SCOTT - September 09, 2024 - 08:34 AM

94.   Tyson and Cal-Maine collectively have market power in the geographic market surrounding the Dexter Complex.

95.   Enormous barriers to entry preclude effective competition in the relevant service market (defined above) in that significant capital expenditure would be required to construct a new meat-processing facility in the geographic market surrounding the Dexter Complex.

96.   The anticompetitive agreement and conduct of Defendants have had the following effects, among others, causing antitrust injury:

a.  Sellers of broiler chicken farming services (like Plaintiffs) are denied ~~Redacted~~ in the Dexter, Missouri geographic market;

b.  Price competition has been severely restrained among buyers of broiler chicken farming services;

c.  Owners of the barns and infrastructure designed to produce chickens for meat production have suffered severe diminution in value of their business and property as there will be ~~Redacted~~ ~~Redacted~~ in the Dexter, Missouri geographic market, thereby reducing the value of the farmers' multi-million-dollar investments to nearly nothing, or even less than nothing;

d.  Owners of the barns and infrastructure designed to produce chickens for meat production have suffered the cost of remediation of their land to its original condition to remove the barns and infrastructure, as it is

now impossible for the barns and infrastructure to be utilized for the sole and exclusive use or purpose; and

e.  Tyson has inflated its profits by contracting and combining with Cal-Maine to reduce the supply of broiler chickens and to inflate prices to consumers of chicken while reducing (to zero) prices paid to sellers of broiler chicken farming services (like Plaintiffs) in the Dexter, Missouri geographic market.

97.    Plaintiffs and the Class Members have sustained injury to their business or property, having been deprived of competition in the market for the purchase of their broiler chicken farming services in the Dexter, Missouri geographic market.  As a result of the conduct of Defendants, Plaintiffs and Class Members have suffered damages.

98.    Plaintiffs and the Class Members have suffered an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

99.    Plaintiffs and the remaining Class Members have suffered damages.

100.    Plaintiffs' broiler chicken barns, and those of the remaining Class Members, are ready and capable of producing broiler chickens.

101.    But for Defendants' anticompetitive scheme, the broiler chicken barns of Plaintiffs and the remaining Class Members would be producing broiler chickens.

## CLASS ACTION ALLEGATIONS

102.    Plaintiffs, on behalf of themselves and the proposed Class, re-allege and incorporate by reference the foregoing paragraphs (and those in specific Counts below) as if fully set forth herein.

103.    Plaintiffs seek to represent the following Class:

Record title owners of real property who have constructed thereon broiler chicken barns located within 50 miles of the Dexter plant.  The putative members of the class are limited to the 45 entities and individuals listed in Exhibit A.

104.    This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria set forth in Missouri Supreme Court Rule 52.08.

105.    **Numerosity**. The proposed Class satisfies the numerosity requirements under Rule 52.08 in that its members are too numerous to practically join in a single action. The number of Class Members is limited to no more than 45. Class Members may be notified of the pendency of this action by mail or other means.

106.    **Predominance**. Common questions of law and fact exist as to all members of the proposed Class and predominate over questions affecting only individual class members. These common questions include, but are not limited to:

a.    Whether Defendants' anticompetitive scheme is *per se* illegal under Missouri Antitrust Law;

b.    Whether Defendants' anticompetitive scheme is an unreasonable restraint of trade under the Missouri Antitrust Law;

c.    Whether Defendants' conduct has unreasonably retrained trade in the Dexter, Missouri geographic market for the purchase of chicken farmer services;

d.      Whether the Class is entitled to a declaration and Order declaring that Defendants' anticompetitive scheme is unlawful under Missouri law, including but not limited to the Missouri Antitrust Law;

e.      Whether Defendants' conduct has tortiously interfered with the Class's ability to realize business expectancies; and

f.      Whether the Class was injured due to Defendants' unlawful conduct.

107.    **Typicality**. Plaintiffs' claims are typical of the claims of the proposed Class because they were injured by Defendants' wrongful conduct in violation of the Missouri Antitrust Law and other state laws, and Defendants' wrongful conduct affected each Class Member in a similar manner, with such conduct giving rise to substantially the same claims.

108.    **Adequacy**. Plaintiffs are an adequate representative of the proposed Class because their interests do not conflict with the interests of the members of the Class that they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously by monitoring and directing the actions of Class counsel. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and undersigned counsel.

109.    **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, though significant, may not be of such magnitude as to make the prosecution of individual

antitrust actions against Defendants economically feasible.  Even if Class members availed themselves of individual litigation and asserted their antitrust claims individually, the court system could not sustain such an imposition. In addition to the burden and expense of managing many actions arising from Defendants' anticompetitive scheme, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

110.   In the alternative, the proposed Class may be certified because:

a.   the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c.    Defendants have acted or refused to act on grounds generally

applicable to the proposed Class, thereby making appropriate

final and injunctive relief with respect to the members of the

proposed Class as a whole.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATION OF MISSOURI ANTITRUST STATUTES**
**(R.S. Mo. §§ 416.031.1, 416.031.3)**
**All Defendants**

111.    Plaintiffs incorporate by reference all foregoing paragraphs (and those in

other Counts) as if fully set forth herein and further states as follows.

112.    Defendants Tyson, Cal-Maine and Avery engaged in a contract,

combination, or conspiracy that unreasonably restrains trade and commerce in violation of

the Missouri Antitrust Law, R.S. Mo. § 416.031. Defendants' conduct violates both

subsections 1 and 3 of Section 416.031.

113.    The anticompetitive conduct alleged in this Petition consists of Defendants'

agreement to restrain trade, which was originally memorialized in the Property Use

Agreement between Tyson and Cal-Maine described in detail above.

114.    In furtherance of their anticompetitive scheme, Defendants committed one

or more overt acts, including but not limited to:

a.  agreeing to the anticompetitive terms of the Property Use Agreement;

b.  executing the Property Use Agreement;

c.  transferring and/or receiving the deed for the property at issue subject to the

Property Use Agreement;

23

    d.  filing with the Stoddard County Recorder of Deeds a vague and misleading "Memorandum of Understanding" that conceals from the public the truth about their illegal and anticompetitive scheme affecting the Dexter Complex;

    e.  Gutting and then retrofitting the Dexter Complex so that the plant can no longer process broiler chickens;

    f.  Misleading the public, including Missouri's elected officials, about the purpose of Defendants' plan;

    g.  Fraudulently concealing the anticompetitive scheme;

    h.  Policing and enforcing the anticompetitive scheme; and

    i.  Conspiring to [Redacted] [Redacted] for the purpose of restraining trade.

115.    Defendants' anticompetitive conduct has restrained competition for the purchase of broiler chicken farmer services in the Dexter, Missouri geographic area. This harm to competition substantially outweighs any purported pro-competitive benefits allegedly arising from Defendants' conduct.

116.    [Redacted] another existing or newly created meat-processing company would have paid Tyson [Redacted] to purchase the Dexter Complex and thereby strengthen competition for the purchase of broiler chicken farmer services in the Dexter market, allowing sellers of chicken farmer services like Plaintiff and Class Members to receive a fair and competitive price for their services.

117.    Defendants' conduct is a *per se* violation under the Missouri Antitrust Law.

118. Alternatively, Defendants' conduct is illegal under the Missouri Antitrust Law under a rule-of-reason analysis.

119. As a direct and proximate result of Defendants' violations of the Missouri Antitrust Law, Plaintiff and Class Members have been injured in their business and property and suffered damages in an amount to be proven at trial.

120. Under R.S. Mo. § 416.121, Plaintiff and Class Members are entitled to an award of threefold damages and reasonable attorneys' fees.

WHEREFORE, Plaintiff and the Class Members pray of this Court for its judgment in favor of Plaintiff and the Class Members and against the Tyson Companies, Cal-Maine and Avery, jointly and severally, and awarding Plaintiff and the Class Members their damages incurred herein in an amount that is fair and reasonable (and thereafter increased threefold), for prejudgment and post-judgment interest, for Plaintiffs' attorney fees and costs incurred herein, and for such other relief as this honorable Court deems just and proper.

## COUNT II – DECLARATORY AND INJUNCTIVE RELIEF
## UNDER THE MISSOURI ANTITRUST LAW
## (R.S. Mo. § 416.121)
## All Defendants

121. Plaintiffs incorporate by reference all foregoing paragraphs (and those in other Counts) as if fully set forth herein and further states as follows.

122. As detailed above, Defendants have engaged in a contract, combination, or conspiracy that unreasonably restrains trade and commerce in violation of the Missouri Antitrust Law, R.S. Mo. § 416.031.

123.    Under R.S. Mo. § 416.121.2, a plaintiff harmed by a violation of the Missouri Antitrust Law may "[b]ring proceedings to enjoin the unlawful practices."

124.    As detailed above, Plaintiffs and Class Members have been harmed by Defendants' violations of the Missouri Antitrust Law.

125.    Plaintiffs and Class Members seek a declaration and Order from this Court declaring that Defendants' conduct is unlawful and violates the Missouri Antitrust Law and enjoining them from engaging in any conduct determined to be unlawful.

WHEREFORE, Plaintiffs and Class Members pray of this Court for its judgment in favor of Plaintiffs and Class Members and against Defendants, jointly and severally, and for entry of an Order: declaring that Defendants' conduct is unlawful and violates the Missouri Antitrust Law; enjoining Defendants from engaging in any conduct determined to be unlawful; and awarding Plaintiffs and Class Members their reasonable attorneys' fees and costs of the suit, and for such other relief as this honorable Court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### All Defendants

126.    Plaintiffs incorporate by reference all foregoing paragraphs (and those in other Counts) as if fully set forth herein and further states as follows.

127.    As described in detail in this Petition, Defendants carried out a scheme to harm and eliminate competition in the Dexter, Missouri market for the purchase of chicken farmer services.

128.    Defendants have harmed Plaintiffs and Class Members and tortiously interfered with the ability of Plaintiffs and the Class Members to do business with other meat-processing companies.

129.    Defendants took these wrongful actions intentionally to unlawfully reduce competition and with the purpose and effect of causing Plaintiffs' inability to realize business expectancies.

130.    Defendants knew of and were aware of the possibility—indeed, certainty—that other business expectancies existed for Plaintiffs and the Class Members, yet Defendants acted to squash any possibility of these other business expectancies ever coming to pass by executing the Dexter Sale Agreement with the 25-year ▮Redacted▮ ▮Redacted▮ in the Property Use Agreement and ensuring that the Dexter plant cannot be used to process chickens.

131.    The Tyson Companies publicly promised that they understood the importance placed on selling the Dexter Complex to a competitor company that processes meat. Instead, internally, Defendants ▮Redacted▮ ▮Redacted▮

132.    Defendants also sought to conceal their wrongful conduct from the public and from Plaintiffs through filing only a vague and incomplete "Memorandum of Understanding" with the Stoddard County Recorder of Deeds. That "Memorandum of Understanding" references but does not describe the significant 25-year ▮Redacted▮ ▮Redacted▮ affecting the Dexter Complex due to the Property Use Agreement between Defendants.

133.   As detailed above, Defendant Mark Avery knowingly and actively participated in Defendants' scheme.

134.   But for Defendants' wrongful conduct, Plaintiffs and the Class Members were reasonably certain to have realized alternative business expectancies.

135.   Multiple serious competitive buyers would have purchased the Dexter Complex and operated it as a chicken processing facility [Redacted] [Redacted]

136.   Defendants' wrongful conduct damaged Plaintiffs and the Class Members.

WHEREFORE, Plaintiffs and the Class Members pray of this Court for its judgment in favor of Plaintiffs and Class Members and against all Defendants, jointly and severally, and awarding Plaintiffs and Class Members their damages incurred herein in an amount that is fair and reasonable, for prejudgment and post-judgment interest, for Plaintiffs and the Class Members' attorney fees and costs incurred herein, and for such other relief as this honorable Court deems just and proper.

## COUNT IV – CIVIL CONSPIRACY
### All Defendants

137.   Plaintiffs incorporate by reference all foregoing paragraphs (and those in other Counts) as if fully set forth herein and further state as follows.

138.   Defendants (and other unnamed co-conspirators) reached an agreement for the unlawful objective to, among other things, tortiously interfere with the business expectancies of Plaintiffs and Class Members.

139.    As explained, because Defendants agreed to [Redacted]

[Redacted]

[Redacted]

140.    Defendants (and other unnamed co-conspirators) committed these acts after a meeting of the minds and through a commitment to a common purpose.

141.    Each Defendant committed at least one act in furtherance of the conspiracy as described in this Petition.

142.    Plaintiffs suffered damages due to Defendants' conduct as described throughout this Amended Petition.

WHEREFORE, Plaintiffs and Class Members pray of this Court for its judgment in favor of Plaintiffs and against all Defendants, jointly and severally, and awarding Plaintiffs and Class Members their damages incurred herein in an amount that is fair and reasonable, for prejudgment and post-judgment interest, for Plaintiffs' attorney fees and costs incurred herein, and for such other relief as this honorable Court deems just and proper

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment awarding the following:

a.    An order certifying the proposed Class and appointing Plaintiffs and undersigned counsel to represent the Class;

b.    An order awarding Plaintiffs and the Class Members their actual damages, and/or all other form of monetary relief provided by and pursuant to law;

c.   An order enjoining Defendants from further engaging in the conduct alleged herein; and

d.   An order awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest, attorneys' fees and costs, and all other relief as allowed under the law.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 9, 2024

Respectfully submitted by:

THE OLIVER FIRM, L.C.

/s/ Russell D. Oliver

RUSSELL D. OLIVER     MO #59394
1402 N. Outer Rd, Ste. A
Dexter, MO 63841
Tele:   (573) 614-7959
russ@oliver-lawfirm.com

CLAYTON JONES,
ATTORNEY AT LAW

/s/ Clayton Jones

Clayton Jones     MO #51802
P.O. Box 257
405 W. 58 Hwy.
Raymore, MO 64083
Tele:   (816) 318-4266
Fax:    (816) 318-4267
clayton@claytonjoneslaw.com