UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| HANOR & BIXLER FARMS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:24-cv-00188-SEP |
| ) | |
| TYSON FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Remand and for Sanctions. Doc. [39]. For the reasons set forth below, remand is granted and sanctions are denied. All other pending motions are denied as moot.

### FACTS AND BACKGROUND

Plaintiffs Hanor & Bixler Farms, LLC, Tetley Company, LLC, Preston Dale Arnold, Brandon Sutton, and Emily Sutton, individually and on behalf of similarly situated individuals, originally filed this class action in the Circuit Court of Scott County, Missouri, against Defendants Tyson Foods, Inc., Tyson Chicken, Inc., and Tyson Sales & Distribution, Inc. (collectively, Tyson); Cal-Maine Foods, Inc. (Cal-Maine); and Tyson's Division Vice President of Food Service Value Added Poultry, Mark Avery. Doc [1-4] at 2-33. Plaintiffs are the owners and operators of broiler chicken farms that provided chicken farming services to Tyson until Tyson closed its Dexter, Missouri Complex (Dexter Complex) in October 2023. *Id.* at 3-4. Plaintiffs have limited the putative class members to include only themselves and 40 other entities and individuals who own chicken farms located within 50 miles of the Dexter Complex. *Id.* at 21, 33. Plaintiffs allege that Defendants engaged in an anticompetitive scheme to eliminate competition for the purchase of broiler chicken farmer services, reduce the supply of broiler chickens, and obtain artificially high profits in the Dexter market. *Id.* at 3.

The Complaint contains the following unredacted allegations, which the Court assumes are true for the purposes of evaluating a motion to remand.[1] *See Filla v. Norfolk S. Ry. Co.*, 336

---

[1] Based on the extensive redactions in the pleadings and Defendants' motions for leave to file numerous relevant documents under seal, it appears that Defendants believe all of the documents that form the basis of many of Plaintiffs' allegations are confidential and should remain under

F.3d 806, 811 (8th Cir. 2003) ("[T]he district court should resolve all facts and ambiguities . . . in the plaintiff's favor."). Tyson had operated a vertically-integrated chicken production system at the Dexter Complex for over 20 years prior to its closure, and prior to Tyson's ownership, the Dexter Complex had operated as a slaughterhouse for broiler chickens since 1893. Doc. [1-4] at 3, 13. In Tyson's chicken production system, Plaintiffs constructed broiler chicken houses that were financed through Tyson's "poultry banks" and could be used only for raising chickens for slaughter at the Dexter Complex. *Id.* at 3. Broiler chicken farms must be located within 50 miles of any processing plant they supply. *Id.* at 14. Because the Dexter Complex was the only chicken processing plant within 50 miles of their farms, the Dexter Complex was the only plant where Plaintiffs could sell their chickens for processing. *Id.*

On August 7, 2023, Tyson announced that all operations at the Dexter Complex would stop in October 2023. *Id.* at 4. After drawing scrutiny from Missouri public officials, Tyson publicly committed to sell the Dexter Complex to any interested party, including a

---

seal pursuant to a protective order that was entered in a separate state court case. But Eastern District of Missouri Local Rule 13.05(A)(3) provides that "[t]he fact that certain information or material has been protected as confidential by parties in a case pursuant to a Protective Order is relevant to, but not dispositive of, whether this information or material will be sealed when filed with the Court," and Defendants have not provided compelling reasons for sealing most of the purportedly confidential documents. *See Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) ("The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006))); *see also In re Neal*, 461 F.3d at 1054 (explaining that the "unintended, potential secondary consequence of negative publicity . . . is regrettable but not a basis for sealing the filing"); A.*I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 2025 WL 973946 (E.D. Mo. Mar. 31, 2025) ("When the documents sought to be sealed are filed with dispositive motions, the presumption of public access is harder to overcome." (citing *Ball Bey v. Chandler*, 2024 WL 888396, at *4 (E.D. Mo. Feb. 13, 2024) (collecting cases))). Moreover, some of the documents have been publicly recorded, and many of the redacted allegations in the Petition have been openly repeated by Defendants in their own filings. *See, e.g.*, Doc. [1-6] at 3-4 ("I understand that Plaintiffs have made this allegation by equating the defined term 'Seller's knowledge' in the Sale Agreement, which is defined to refer to Mr. Avery's personal knowledge, with the undefined term 'Tysons's knowledge' as it appears in the Property Use Agreement and in the Memorandum of Understanding."); Doc. [22] at 8 ("Plaintiffs inexplicably conclude that 'only Mark Avery' has knowledge of several ordinary course documents 'referenced in' the PSA related to the operation of the [Dexter] Complex that were delivered to Cal Maine in connection with the sale."); Doc. [54] at 7 ("Avery is named in the PSA. . . ."). But the Court will not expend the resources to bring the parties' filings into compliance with Local Rule 13.05 at this time, because its ruling rests on information in the parties' redacted pleadings.

competitor, but Tyson's Chief Executive Officer stated that it is Tyson's policy not to sell facilities to competitors. *Id.* at 4-6.

Tyson negotiated and ultimately sold the Dexter Complex to Cal-Maine, which processes only unfertilized table eggs, pursuant to an anticompetitive scheme with the intent to restrain trade in broiler chicken production in the Dexter geographic market. *Id.* at 6-7. Defendant Avery "served in a supervisory and/or management role at Tyson, including but not limited to the position of Complex Manager of the Dexter Complex and Vice President," in which capacity he "actively participated in, authorized, directed and/or knowingly approved or ratified this anticompetitive scheme." *Id.* at 12, 16, 18. Tyson and Cal-Maine memorialized their anticompetitive agreement and intent to restrain trade in broiler chicken production in a Purchase and Sale Agreement (PSA) and Property Use Agreement (PUA). *Id.* at 7. According to Plaintiffs, Defendants' PSA contains evidence that the sale of the Dexter Complex was intended to restrain trade and suppress the market supply of chicken meat. *Id.* at 14-15. The PSA specifically refers to Avery having knowledge about certain documents and agreements related to the operation and sale of the Dexter Complex and whether the sale and closure of the Dexter Complex violated Missouri law. *Id.* at 15-16. The PSA also refers to several exhibits, including a publicly-recorded Memorandum of Understanding (MOU) that references the PUA, which Plaintiffs allege contains anticompetitive terms. *Id.* at 7. The MOU does not state that the PUA contains anticompetitive terms, but it does state that the PUA "shall remain in force and effect for 25 years and that it shall bind Cal-Maine, any successor grantee, transferee, assignee, owner, tenant or any other party in possession of the property on which the Dexter Complex is located." *Id.* at 17 (citation modified).

Tyson subsequently removed all of the necessary equipment for processing chickens from the Dexter Complex, and Cal-Maine retrofitted the Dexter Complex so that chickens could no longer be processed there. *Id.* at 6. Table eggs require a grow process that is entirely different than the process for raising broiler chickens for slaughter, and Plaintiffs' farms were not built to grow table eggs. *Id.* Like Tyson, Cal-Maine contracts with chicken growers to raise chickens across the country, making Cal-Maine a potential competitor. *Id.* at 17. Tyson has reported in SEC filings that competitors might negotiate more favorable contracts with chicken growers that could provide them competitive advantages and affect Tyson's supply. *Id.* at 17-18. If Cal-Maine paid chicken growers more than Tyson, the competition would harm Tyson. *Id.* at

3

18. By selling Dexter Complex and modifying the facility so that it could process only table eggs, Defendants geographically isolated Plaintiffs from any broiler chicken processing plant. No Plaintiff has a chicken farm within 50 miles of another processing plant, and it is cost-prohibitive for any other company to build a new chicken processing plant and enter the Dexter geographic market to process broiler chickens.  *Id.* at 6-7.

After Tyson was sued in a separate lawsuit alleging that the PUA constituted an illegal restraint of trade, Tyson and Cal-Maine rescinded the PUA.  *Id.* at 8.  But the recission did not remedy the anticompetitive injury because Defendants had already accomplished their anticompetitive goal by removing all of the equipment necessary for processing chickens from the Dexter Complex and retrofitting the facility to be used only to process table eggs.  *Id.* at 8-9. Pointing to the following language from Tyson's complaint in a related lawsuit, Plaintiffs assert that Tyson has admitted that its anticompetitive scheme with Cal-Maine was successful:

> 63. The significant investments made by Cal-Maine to repurpose and improve the Dexter Complex and hire the farmers serving that facility has assuaged Tyson's concern about the potential for arbitrage with the Dexter Complex, and eliminated the need for a deed restriction that reduces the risk that Cal-Maine could profitably engage in arbitrage.
>
> 64. Comfortable that Cal-Maine was not trying to flip the Dexter Complex and the Property Use Agreement was no longer necessary to protect Tyson's interests, Tyson entered a Termination Agreement with Cal-Maine that eliminated the Property Use Agreement on July 25, 2024. A Release of Memorandum of Understanding memorializing this Agreement was publicly recorded with the Recorder of Deeds in Stoddard County, Missouri on July 29, 2024, in Book 2024, Page 2309.

*Id.* at 9.[2]

As a result of Defendants' restraint of trade, Plaintiffs' broiler chicken farms—which were built to grow only broiler chickens with money borrowed from Tyson's poultry banks—are now worthless.  *Id.*  Plaintiffs assert that the PUA and the modifications Defendants made to the Dexter Complex are per se illegal under Missouri law.  *Id.* at 18.  Alternatively, Plaintiffs allege that Defendants' actions violate the rule of reason in that they unreasonably restrain trade in the market for broiler chicken farming services in the Dexter region.  *Id.*

Plaintiffs allege that Defendants' anticompetitive agreement and conduct have caused them to suffer antitrust injuries of the type that Missouri's antitrust laws are meant to prevent.

---

[2] *See Tyson Foods, Inc. v. Skaggs*, No. 1:24-cv-00150-SEP (E.D. Mo. Aug. 9, 2024).

4

*Id.* at 20.  Because there is no broiler chicken processing plant left within 50 miles of their farms, Plaintiffs have been denied any potential buyer for their broiler chicken farming services.  *Id.* at 19.  Price competition has been severely restrained among buyers of broiler chicken farming services, and the value of Plaintiffs' multi-million-dollar investments in their barns and chicken-growing infrastructure have been reduced to nothing.  *Id.*  Because it is now impossible for their barns and infrastructure to be utilized for their sole and exclusive purpose, Plaintiffs have been required to pay the costs of removing them to remediate their land.  *Id.* at 19-20.  Further, Tyson has inflated its profits by contracting and combining with Cal-Maine to reduce the supply of broiler chickens and inflate prices to chicken consumers while reducing the prices paid to broiler chicken farmers like Plaintiffs in the Dexter geographic market.  *Id.* at 20.  But for Defendants' anticompetitive scheme, Plaintiffs assert that they would still be producing and selling broiler chickens.  *Id.*  Plaintiffs bring claims of antitrust violations pursuant to Mo. Rev. Stat. §§ 416.031 (Count I) and 416.121 (Count II); tortious interference with business expectancy (Count III); and civil conspiracy (Count IV).  *Id.* at 24-30.  Plaintiffs seek damages, as well as declaratory and injunctive relief.  *Id.* at 30-31.

      Defendants filed a timely notice of removal, invoking diversity jurisdiction.  Doc. [1] at 3.  Defendants assert that the amount in controversy exceeds $75,000 and that Plaintiffs are citizens of Missouri, Tyson is a citizen of Delaware and Arkansas, and Cal-Maine is a citizen of Delaware and Mississippi.  *Id.* at 4-6.  Defendants acknowledge that Avery is a citizen of Missouri, but they argue that he was fraudulently joined and that Plaintiffs have no reasonable basis for asserting claims against him.[3]  *Id.* at 5-10.  Along with the notice of removal,

---

[3] Defendants also assert that removal is proper under the Packers and Stockyards Act because this action arises out of Plaintiffs' poultry-growing arrangement with Tyson.  Doc. [1] at 10-11.  But Defendants do not provide any authority in support of this proposition, and the Court has found no such authority.  Indeed, the only case Defendants cite that has considered this issue found that "the most reasonable reading of the [Packers and Stockyards Act] is that it does not give rise" "to the right to remove a case from state court that asserts only state law claims but happens to arise out of a poultry growing arrangement."  *Volentine v. Raeford Farms of La., LLC*, 2010 WL 743557, at *3 (W.D. La. Feb. 24, 2010).  Defendants claim that the Supreme Court confirmed that *Volentine* was wrongly decided in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016), but that case does not involve the Packers and Stockyards Act or otherwise provide support for Defendants' position.  Because Defendants do not develop this argument beyond conclusory assertions, the Court declines to consider it.  *See Jacam Chem. Corp. 2013, LLC v. Shepard*, 101 F.4th 954, 963 (8th Cir. 2024) ("A party may not make

Defendants have submitted the affidavits of Avery and Vice President and Gordon McGrath, who is Associate General Counsel for Tyson. Docs. [1-6], [1-10]. McGrath states in his declaration that Avery "has no involvement in the 'enforcement' of the [PUA]." Doc. [1-6] at 5. In his declaration, Avery generally denies Plaintiffs' allegations against him, stating that it was not his decision to close the Dexter Complex, that he was acting within the scope of his employment with Tyson, that he received no personal benefit from any of Tyson's alleged conduct concerning the sale and closure of the Dexter Complex, that he does not recall seeing the final PSA, and that he had no knowledge of Plaintiffs' future business expectancies at the time the PSA was signed. Doc. [1-10].

Plaintiffs timely move to remand this case to state court, arguing that this Court lacks subject matter jurisdiction because all of their claims against Avery are colorable. Doc. [39] at 12-17. Plaintiffs point to an earlier lawsuit filed in state court against Tyson and Avery, *Hinkle, et al. v. Tyson Foods, Inc., et al.*, No. 24NM-CV000313, and state that many of the allegations and claims in *Hinkle* are substantially similar to the allegations and claims in this case. *Id.* at 6. Plaintiffs assert *Hinkle* supports their contention that their claims against Avery are colorable because Tyson and Avery twice moved to dismiss the claims against them in *Hinkle*—citing the same cases cited in the instant notice of removal—and the state court denied both motions to dismiss. *Id.* at 7. Plaintiffs also ask this Court to order Defendants to pay the attorneys' fees they incurred as a result of the removal. *Id.* at 22-23.

Defendants oppose the motion to remand. Docs. [54], [58]. They contend that the state court's orders denying their motions to dismiss in *Hinkle* do not preclude the Court from finding that Avery was fraudulently joined because the *Hinkle* court did not have the benefit of Avery and McGrath's declarations attesting to Avery's lack of participation in the alleged misconduct. Doc. [54] at 11-12. Defendants further assert that the *Hinkle* court applied Missouri's pleading standards in assessing their motions to dismiss and that the claims in *Hinkle* are not the same as those asserted in this case. *Id.* at 12-13. Defendants contend that that the antitrust claims against Avery fail because Avery stated in his declaration that he did not participate in any of Tyson's

---

bare-bones assertions 'hoping that [the Court] will do its work for it by developing the argument and putting flesh on its bones.'" (quoting *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 324 (8th Cir. 2018))).

6

alleged misconduct, and Plaintiffs failed to plead an injury flowing from the PUA or the PSA.[4] *Id.* at 13-18.

In their reply, Plaintiffs argue that the Court should not credit Defendants' self-serving declarations because they contain conclusory allegations that have not been tested by cross-examination or supported by other documentary evidence, and that the declarations fail to prove that Plaintiffs' claims against Avery lack a reasonable basis in law and fact. Doc. [62] at 6-9. Plaintiffs also reiterate their contentions that all of their claims against Avery are colorable and that the *Hinkle* court's denial of Defendants' motions to dismiss support their arguments in favor of remand. *Id.* at 9-16.

### LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A claim may be removed to federal court only if it could have been brought there originally. *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996). For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship, which means that "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

"The [removing] defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). The federal court must remand the case to state court if it appears the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 620. "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 620.

The doctrine of fraudulent joinder is "an exception to the complete diversity rule." *Id.* (citing 14B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3723, at 788-89 (4th ed. 2009)). "[T]o establish fraudulent joinder, the defendant must 'do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion' since 'we do not focus on the artfulness of the plaintiff's pleadings.'" *Block v. Toyota Motor Co.*, 665 F.3d 944,

---

[4] Defendants also argue that Plaintiffs' tortious-interference and civil-conspiracy claims against Avery fail. Doc. [54] at 17-19. The Court does not reach those arguments in light of its conclusion that it lacks subject matter jurisdiction over this action.

7

948 (8th Cir. 2011) (quoting *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011)). Instead, the removing defendant must "prove that the plaintiff's claim against the diversity-destroying defendant has 'no reasonable basis in fact and law.'" *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 810). "Under this standard, 'if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained.'" *Id.* (quoting *Filla*, 336 F.3d at 810). Conversely, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Id.* (quoting *Filla*, 336 F.3d at 811). "In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Filla*, 336 F.3d at 811. "[W]here the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply remand the case and leave it for the state courts to decide.'" *Id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 n.6 (8th Cir. 1977)).

## DISCUSSION

The issue in this case is whether state law might impose liability on Avery under the facts alleged. *Filla*, 336 F.3d at 810. If any of Plaintiffs' claims against Avery are colorable, there is no fraudulent joinder, and this Court lacks subject matter jurisdiction. *Id.*

Defendants argue that Plaintiffs' antitrust claims against Avery have no reasonable basis in fact and law because Avery stated in his declaration that he did not participate in or authorize any of Tyson's alleged anticompetitive conduct. Doc. [54] at 13-16. They further contend that Plaintiffs have failed to properly plead a cognizable antitrust injury because Plaintiffs' alleged injuries flow only from Tyson's unilateral decision to close the Dexter Complex, not the PSA or PUA. *Id.* at 16-17. And Defendants assert that Plaintiffs' injuries are not traceable to the PSA or the PUA because they would have suffered the same injuries if Tyson had simply closed the Dexter Complex without selling it to Cal-Maine. *Id.*

Plaintiffs counter that Defendants have not sufficiently proven that the antitrust claims against Avery have no reasonable basis in fact and law by submitting self-serving and conclusory declarations to generally deny Plaintiffs' allegations. Doc. [62] at 6-10. Plaintiffs assert that they have pled all of the elements of a Missouri antitrust claim, including antitrust injury,

8

because they specifically alleged that Defendants conspired to restrain and eliminate the market for chicken farming services to chicken processing companies for at least 25 years in the Dexter market. *Id.* at 11-13.  Plaintiffs charge Defendants with mischaracterizing their allegations as challenging only the closure of the Dexter Complex when they also allege that the sale of the Dexter Complex included an illegal restraint on how buyers could use the facility. *Id.* at 13.

Section 416.031.1 provides that "[e]very contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful."  "The Missouri Antitrust Law . . . is construed in harmony with ruling judicial interpretations of comparable federal statutes." *Stensto v. Sunset Mem'l Park, Inc.*, 759 S.W.2d 261, 266 (Mo. Ct. App. 1988) (citing Mo. Rev. Stat. § 416.141).  "Section 416.031.1 closely parallels 15 U.S.C. § 1 of the Sherman Act." *Johnston v. Norrell Health Care, Inc.*, 835 S.W.2d 565, 568 (Mo. Ct. App. 1992).  "A party alleging a violation of 15 U.S.C. § 1 must allege that (1) defendants contracted, combined or conspired among each other; (2) the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets; (3) the objects of and the conduct pursuant to the contract or conspiracy were illegal; and (4) plaintiff was injured as a proximate result of the conspiracy." *Id.* (citing *Defino v. Civic Ctr. Corp.*, 718 S.W.2d 505, 510 (Mo. Ct. App. 1986)).

The Court finds that Defendants have not met their burden of proving that the antitrust claims against Avery have no reasonable basis in fact and law.  The Petition alleges—and Defendants do not dispute—that Avery was Tyson's Division Vice President and served in a "supervisory and/or management role" at the Dexter Complex.  Doc. [1-4] at 12.  Plaintiffs allege that Avery actively enforced, "participated in, authorized, directed and/or knowingly approved or ratified [Defendants'] anticompetitive scheme." *Id.* at 16, 18.  Defendants acknowledge that Avery is expressly named in the PSA and that the PSA defines the term "Seller's knowledge" as Avery's actual knowledge of documents and agreements related to the operation and sale of the Dexter Complex.  Doc. [1-6] at 3-4; Doc. [54] at 7.  And Plaintiffs allege that, according to the PSA, only Avery knew whether the closure and sale of the Dexter Complex complied with Missouri law.  Doc. [1-4] at 15-16.  The Petition further alleges that the PUA contains anticompetitive terms; the PSA specifically references the PUA; the PUA is attached to the PSA as an exhibit; and Tyson and Cal-Maine agreed to the PUA in the PSA. *Id.* at 7, 16-17.  Tyson and Cal-Maine eventually rescinded the PUA, but Plaintiffs allege that the recission did not remedy the anticompetitive injury because Defendants had already

9

accomplished their anticompetitive goal by removing all of the equipment necessary for processing chickens from the Dexter Complex and retrofitting the facility so that it could only be used to process table eggs and could never again be used to process chickens. *Id.* at 8-9. The Petition states that Defendants' anticompetitive agreement and conduct restrained and effectively eliminated the competition for the purchase of broiler chicken farming services in the Dexter market, thereby injuring Plaintiffs. *Id.* at 18-20. Given these allegations, the Court finds that Plaintiffs have stated a colorable antitrust claim against Avery. *See Johnston*, 835 S.W.2d at 568 (reciting the elements of a Missouri antitrust claim).

Defendants urge the Court to consider McGrath and Avery's declarations in analyzing whether Avery actually participated in the alleged anticompetitive scheme. Of course, in determining whether Avery was fraudulently joined, the Court's "task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved," and it must "resolve all facts and ambiguities . . . in the plaintiff's favor." *Filla*, 336 F.3d at 811. The Court may not step past the threshold jurisdictional issue to deciding the merits of Plaintiffs' claims. *See id.* ("Like the district court, we have no power to decide the merits of a case over which we have no jurisdiction."). In that context, the affidavits make little difference to the Court's analysis. Both are self-serving and conclusory. *See Gardner v. J.C. Penney Corp., Inc.*, 2005 WL 6267692, at *2 (E.D. Mo. May 2, 2005) ("Conclusory affidavits cannot establish fraudulent joinder, just as conclusory allegations in a complaint will not defeat a finding of fraudulent joinder." (citing *In re Baycol Prods. Litig.*, 2003 WL 21223842, at *2 (D. Minn. 2003))). Avery's declaration does little more than deny the allegations in the Petition, and McGrath's declaration is largely irrelevant to the issue of fraudulent joinder. *See generally* Docs. [1-6], [1-10]; *see also Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.*, 2009 WL 395162, at *6 (N.D. Iowa Feb. 17, 2009) ("Were courts to find fraudulent joinder whenever presented with a defendant's self-serving affidavit, few cases would ever be remanded and federal jurisdiction would greatly expand." (citing *Polito v. Molasky*, 123 F.2d 258, 261 (8th Cir. 1941))). Thus, notwithstanding the affidavits, resolving all facts and ambiguities in favor of Plaintiffs, the Court finds that there is "a reasonable basis for believing Missouri might impose liability against" Avery. *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007). Defendants' fraudulent joinder challenge fails.

Defendants' argument that Plaintiffs failed to adequately plead an antitrust injury is likewise unpersuasive. While Defendants assert that Plaintiffs' injuries flow only from Tyson's initial closure of the Dexter Complex, as opposed to the PSA or PUA, Plaintiffs challenge Defendants' entire anticompetitive scheme related to the closure and sale of the Dexter Complex, including the PSA and PUA. Doc. [1-4] at 18-20, 24-26. The Petition alleges that the sale of the Dexter Complex included an illegal restraint on how Cal-Maine and future buyers could use the Dexter Complex and that Defendants' modification of the Dexter Complex accomplished their anticompetitive goals. *Id.* at 6-9. Plaintiffs assert that Defendants' anticompetitive conduct and agreement caused them to suffer antitrust injuries by restraining and effectively eliminating competition for the purchase of broiler chicken farming services in the Dexter market. *Id.* at 19-20, 24-26. Such allegations appear to be precisely "the type of loss that the claimed violations . . . would be likely to cause," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 125 (1969)), and none of the cases cited by Defendants convince the Court otherwise. And even if the sufficiency of Plaintiffs' antitrust claims against Avery "is questionable, 'the better practice is . . . not to decide the doubtful question in connection with a motion to remand but simply remand the case and leave it for the state courts to decide.'" *Filla*, 336 F.3d at 811.

Plaintiffs have requested that this Court award attorneys' fees pursuant to 28 U.S.C. § 1447(c). Although Defendants have not met their burden of establishing federal jurisdiction, the Court cannot conclude that Defendants lacked any reasonable basis for seeking removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (an award of costs and fees is appropriate where the removing party "lacked an objectively reasonable basis for seeking removal"). Thus, Plaintiffs' request for attorneys' fees is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, Doc. [39], is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court of Scott County, Missouri.

**IT IS FURTHER ORDERED** that Plaintiffs' request for attorneys' fees is **DENIED**.

**IT IS FINALLY ORDERED** all other pending motions are **DENIED as moot** in light of the Court's lack of jurisdiction.

A separate Order of Remand will accompany this Memorandum and Order.

Dated this 15th day of September, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE